UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

STEPHANIE LINDLEY,

Plaintiff,

v.                    4:11-cv-147

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver of the
business and property of DARBY BANK
& TRUST CO., DRAYPROP, LLC,
DRAYPARK, LLC, MICHAEL
BROWN, REUBEN CROLL, and
MARLEY MANAGEMENT, INC.,

Defendants.

# ORDER

## I. INTRODUCTION

Before the Court are the Federal Deposit Insurance Corporation's ("FDIC-R") "Renewed Motion for Summary Judgment," *see* Doc. 16, and Marley Management, Inc.'s ("Marley Management") "Motion to Dismiss," *see* Doc. 15.

## II. FACTS

On July 17, 2009, Plaintiff Stephanie Lindley ("Lindley") filed a complaint in the State Court of Chatham County against Defendants Darby Bank & Trust Co. ("Darby Bank"), Drayprop, LLC, Draypark, LLC, Michael Brown, and Reuben Croll, arising from the purchase of a floor of the Drayton Towers building in Savannah, Georgia. *See* Doc. 1-13 at 24-31. Lindley filed a complaint against Marley Management on May 27, 2010. *See* Doc. 15-1. The two separate actions were later consolidated. *See* Doc. 1-9 at 14.

On November 12, 2010, the Georgia Department of Banking and Finance closed Darby Bank, took possession of it, and appointed the FDIC as its receiver. *See* Doc. 1 at 2. After a brief return to state court, the case is back before this Court with the FDIC having been substituted as a party for Darby Bank. *See* Docs. 12; 14.

Lindley purchased the fifth floor of the Drayton Tower building in July 2005. *See* Docs. 1-13 at 26; 15-1 at 2. Lindley claims that, in making her acquisition, she relied upon Defendants' representations that infrastructure for the Drayton Tower project would be complete eight months from the date of Lindley's purchase (March 1, 2006). *See id.*

Lindley's complaint alleges negligent misrepresentation, breach of contract, breach of warranty, and fraud. *See* Doc. 1-13 at 27-30. Her allegations against Darby Bank are predicated upon not a loan, but a letter dated May 20, 2005, from Salita R. Hill ("Hill"), a Vice President of Darby Bank at the time, addressed to The Drayton Tower Condominium Association c/o Richard Mopper of Mopper-Stapen Realtors (the "Hill Letter"). *See* Docs. 16-3 at 2; 21 at 2. The Hill Letter stated that " Darby Bank & Trust Company will guarantee the availability of funds up to the amount of $1,500,000.00." Doc. 16-3 at 2. The letter further stated that "should Drayprop, L.L.C. fail to perform in the specified time period ending March 1, 2006, the remaining funds will be released as necessary to the Drayton Tower Condominium Association to complete items as required." *Id.* The letter is signed only by Hill, and was not reviewed or approved by anyone else at Darby Bank

prior to its issuance. *See id.*; Doc. 16-4 at 3, 5.

Lindley received the letter not from any employee of Darby Bank, but from Richard Mopper. *See* Doc. 21 at 3. Lindley never spoke to any employee of Darby Bank, including Hill, regarding the Hill letter. *See* Doc. 16-5 at 3-4. Moreover, no employee of Darby Bank gave her any other documents that she relied upon in investing in the Drayton Tower Project. *See id.* at 6

Lindley alleges that the work was not completed by March 1, 2006, and remains largely incomplete. *See* Doc. 20 at 2. She also claims that no funds were ever released. *See id.*

## III. ANALYSIS

### A. FDIC-R's Motion for Summary Judgment

The FDIC-R has moved for summary judgment as to all of Lindley's claims pending against it. *See* Doc. 16.

#### 1. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1437 (11th Cir. 1991).

"The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks removed).

The nonmoving party then "may not rest upon the mere allegations or denials of the [nonmoving] party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1294 (11th Cir. 1998). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material only if it might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248.

#### 2. D'Oench and § 1823(e)

The FDIC-R contends that Lindley's claims are precluded by 12 U.S.C. §§ 1823(e) and 1821(d)(9)(A) because they are not based upon a fully executed, properly documented agreement that constitutes an official record of Darby Bank. *See* Doc. 16-2 at 8 Lindley bases her claims against Darby Bank and the FDIC-R upon the Hill Letter. *See* Doc. 21 at 2.

In *D'Oench, Duhme & Co. v. FDIC*, the Supreme Court held that a securities dealer who executed a demand note with a bank that was subsequently acquired by the FDIC could not keep the FDIC from enforcing the agreement. 315 U.S. 447, 459, 461-62

2

(1942). The Court held that a secret, unrecorded agreement could not operate as a defense against the FDIC's lawsuit. *See id.* at 461-62.

Current application of the *D'Oench* doctrine "depends upon whether the purported agreement relied upon by the private party was ever memorialized in writing or otherwise made explicit such that . . . the FDIC would have knowledge of the bank's obligations during an evaluation of the bank's records." *FDIC v. McCullough*, 911 F.2d 593, 600 (11th Cir. 1990).

The doctrine applies when the FDIC acts as a receiver. *See Murphy v. FDIC*, 208 F.3d 959, 963 (11th Cir. 2000).

*D'Oench*'s statutory complement is codified at 12 U.S.C. § 1823(e). This section provides:

> No agreement which tends to diminish or defeat the interest of [the FDIC] in any asset acquired by it . . . as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—(A) is in writing, (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1). In the context of section 1823(e)(1)(B), "executed" means "signed." *See Twin Const., Inc. v. Boca Raton, Inc.*, 925 F.2d 378, 384 (11th Cir. 1991).

The burden of establishing that an agreement satisfies § 1823(e)(1)'s requirements lays with the party claiming the adverse interest. *See, e.g., FDIC v. Oldenburg*, 34 F.3d 1529, 1551 (10th Cir. 1994); *Hanson v. FDIC*, 13 F.3d 1247, 1253 (8th Cir. 1994); *see also FDIC v. Gulf Life Ins. Co.*, 737 F.2d 1513, 1516 (11th Cir. 1984).

12 U.S.C. § 1821(d)(9)(A) states that "any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the [FDIC]."

"[C]ourts have found the aims of section 1823(e) and *D'Oench* identical and thus have construed defenses premised upon section 1823(e) and *D'Oench* in tandem." *Twin Const.*, 925 F.2d at 382.

Applying *D'Oench* and § 1823(e) in tandem, the Court determines that Lindley cannot bring her claims against the FDIC-R. In order for a writing to be enforceable against the FDIC-R, the writing must be executed (signed) by *both* the depository institution and the interested party. *See* 12 U.S.C. § 1823(e)(1)(B); *Twin Const.*, 925 F.2d at 384. Lindley did not sign the writing upon which she bases her claims. *See* Doc. 16-3 at 2. The undisputed evidence in the record indicates that the letter was neither

3

approved by Darby's board of directors nor recorded in any minutes. *See* Doc. 16-4 at 3, 5; *see also* 12 U.S.C. § 1823(e)(1)(C) (requiring board approval and minute recordation). Finally, there is no evidence even suggesting that the letter was an official record. *See* 12 U.S.C. § 1823(e)(1)(D) (mandating official recordation). There is simply no evidence in the record indicating that the FDIC-R would have knowledge of the Hill letter during an evaluation of Darby Bank's records.

Lindley bore the burden of proving that the Hill letter satisfied § 1823(e)(1). Lindley has not carried this burden. Hence, the Hill Letter is not enforceable against the FDIC-R.

Lindley contends that § 1823(e)(1) will not bar her claims after she voluntarily amends her complaint to comply with the parameters of an insurance policy maintained by Darby Bank . *See* Doc. 20 at 3-4. She claims that enforcing the letter against Darby Bank and the FDIC-R will not "diminish or defeat" the FDIC-R's interest in Darby Bank because the insurance company will pick up the tab. *See* Doc. 16-2 at 13-14; *see also* 12 U.S.C. § 1823(e)(1).

Congress's use of the word "tends" demonstrates the needlessness of an exact determination of whether the FDIC-R's interest in a particular asset is diminished or defeated in each case. Enforcement of a promise to make $1,500,000 available would certainly "*tend*[] to diminish or defeat the interest" of the FDIC-R, regardless of whether the FDIC-R would see an actual diminution in value of its assets in this case. Because a tendency to defeat or diminish is all that is required for application of the statute, a precise computation of the FDIC-R's net loss or gain in a particular case is unnecessary. *See, e.g., Talmo v. FDIC*, 782 F. Supp. 1538, 1540 (S.D. Fla. 1991) (looking at type of agreement and considering its tendency to diminish rights generally, not its actual diminution of the FDIC's interest in that particular case). Thus, Lindley's argument is unpersuasive.

Lindley has not presented evidence sufficient to fall within § 1823(e)(1)'s exception. Lindley's failure to meet her burden is fatal to her claims against the FDIC-R. Therefore, *D'Oench* and § 1823(e) operate to bar Lindley's claims against the FDIC in its capacity as receiver. Lindley's claims against the FDIC-R are ***DISMISSED***.

### 3. *Equitable Relief and Punitive Damages*

The FDIC-R also requests that the Court dismiss any claims for equitable relief or punitive damages that are pending against the FDIC-R. 12 U.S.C. § 1821(j) provides that "no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver." 12 U.S.C. § 1825(b)(3) provides that the FDIC-R, "shall not be liable for any amounts in the nature of penalties."

Upon reviewing the complaint, the Court determines that Lindley does not seek equitable relief against the FDIC-R. *See* Doc. 1-13 at 24-31. Because the Hill letter cannot serve as a basis for relief against the FDIC-R, Lindley is not entitled to punitive

damages against Darby Bank or the FDIC-R. *See Chaney v. Harrison & Lynam, LLC*, 308 Ga. App. 808, 819 (2011) (noting derivative nature of punitive damages). Accordingly, the Court need not pursue the FDIC-R's request further.

The FDIC-R's Motion for Summary Judgment is ***GRANTED***. Lindley's claims against the FDIC-R are ***DISMISSED***.

### B. Marley's Management's Motion to Dismiss

Marley Management has filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Lindley's claims against it on statute of limitations grounds. *See* Doc. 15.

*1. Motion to Dismiss Standard*

In considering a Federal Rule of Civil Procedure 12(b)(6) motion, all facts in the plaintiff's complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). A complaint will not be dismissed so long as it contains factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (claim must have "facial plausibility"); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).

The *Iqbal* Court further explained the required level of specificity:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

129 S. Ct. at 1949 (internal citation and quotation omitted).

In order to assess the plausibility of a complaint, a court must be mindful of two principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

"A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir.2008) (citation and internal quotation omitted).

*2. Fraud and/or Negligent Misrepresentation*

Lindley's fraud and negligent misrepresentation claims against Marley Management are time barred. "A four-year statute of limitation governs actions for fraud and negligent misrepresentation." *Willis v. City of Atlanta*, 265 Ga. App. 640, 643 (2004); *see also* O.C.G.A. § 9-3-31 ("Actions for injuries to personalty shall be brought within four years after the right of action accrues").

"[T]he clock begins to tick at the time the first bit of injury arises; indeed 'the cause of action arises . . . before the client

5

sustains all, or even the greater part, of the damages . . . ." *Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinskbank, AG*, 341 F. App'x 487, 495 (11th Cir. 2009) (quoting *Jankowski v. Taylor, Bishop, & Lee*, 246 Ga. 804 (1980)). Thus, even if the Court construes Lindley's complaint to identify a series of false assertions as opposed to one isolated statement, *see* Doc. 18 at 4, the Court must begin measuring the limitation period from Lindley's "first bit of injury."

Economic harm suffered by the plaintiff must be definite in order to trigger the statute of limitations. *See Coffee v. Gen. Motors Acceptance Corp.*, 30 F. Supp. 2d 1376, 1382 (S.D. Ga. 1998); *see also Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 427 (1997).

According to Lindley's complaint, Lindley indubitably suffered damage no later than March 1, 2006, the date upon which the infrastructure should have been, but was not, completed. She brought her complaint against Marley Management on May 27, 2010. *See* Doc. 15-1. Accordingly, Lindley's complaint against Marley Management is time-barred unless the limitations period was tolled.

Lindley alleged fraud against Marley Management, and fraud may toll the statute of limitations period. "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." O.C.G.A. § 9-3-96.

This tolling provision requires actual fraud involving:

> "moral turpitude . . . and requires an intentional deception by false representation or by concealment of a fact. When actual fraud is the gravamen of the underlying action, no independent fraud is required for tolling of the statute of limitation, and the limitation period is tolled until the plaintiff discovers or in the exercise of reasonable diligence should have discovered the fraud.

*Hahne v. Wylly*, 199 Ga. App. 811, 812 (1991) (citations omitted). The fraud, however, must still be such that it conceals the cause of action. *See McElmurray v. Augusta-Richmond Cnty.*, 274 Ga. App. 605, 614-15 (2005) ("[T]he fraud in question is not that which gives a cause of action, but that which conceals a cause of action. To constitute concealment of a cause of action so as to prevent the running of limitations, some trick or artifice must be employed to prevent inquiry or elude investigation, or to mislead and hinder the party who has the cause of action from obtaining information, and the acts relied on must be of an affirmative character and fraudulent." (internal quotation omitted)); *see also Costrini v. Hansen Architects, P.C.*, 247 Ga. App. 136, 138 (2000) (requiring fraud different from that which supported the action).

Lindley alleges no fraud that kept her from filing her suit on time. Thus, Lindley's complaint itself demonstrates that her fraud and negligent misrepresentation claims against Marley Management are time barred.

*3. Breach of Oral Contract*

Lindley's breach of contract claim against Marley Management is also time-barred. "Where the agreement is incomplete, such that the writing does not form a contract or the promise allegedly broken stems from a purely oral agreement, the four-year statute of limitation of O.C.G.A. § 9-3-25 applies." *Newell Recycling of Atlanta, Inc., v. Jordan Jones*

& *Goulding, Inc.*, 288 Ga. 236, 238 (2010). In calculating the running of the statute of limitations for contract claims, "[t]he time of breach controls, not the time the damages result or are discovered." *Dillon v. Reid*, 2011 WL 4840641, at *5 (Ga. App. Oct. 13, 2011).

Lindley's complaint seems to focus its breach of contract claims on Marley Management's oral assertions that it would fulfill its role in the completion of the Drayton Tower infrastructure within eight months. *See* Doc. 15-1 at 2. Accordingly, the contract in this case would have been breached no later than March 1, 2006, the date upon which the infrastructure should have been, but was not, completed. *See id.* Furthermore, Lindley alleges no fraud that kept her from filing her suit on time. Accordingly, Lindley's breach of contract claim against Marley Management is barred by the statute of limitations.

### 4. *Negligent Management*

Finally, Lindley's negligent management claim is also barred as pled. Lindley alleges damage only to her personalty, and thus the four year statute of limitations for injuries to personalty applies. *See* O.C.G.A. § 9-3-31. As explained *supra*, a cause of action for injury to personalty accrues when "the first bit of injury arises." *Curtis Inv. Co.*, 341 F. App'x at 495. For the reasons explained *supra*, Lindley's injuries occurred no later than March 1, 2006, and thus, her negligent management claim is barred.

Lindley contends that none of her claims against Marley Management should not be dismissed because she became aware of Marley Management's role in the renovation of the Drayton Tower and the extent to which the mismanagement was attributable to Marley Management only after other property owners filed suit against Defendants. *See* Doc. 18 at 5.

This argument is without merit. "Mere ignorance of the facts constituting a cause of action does not prevent the running of the statute of limitations, for a plaintiff must exercise reasonable diligence to learn of the existence of a cause of action." *Macomber v. First Union Nat'l Bank of Ga.*, 212 Ga. App. 57, 59 (1994) (quoting *Limoli v. First Ga. Bank*, 147 Ga. App. 755, 757 (1978)). Thus, Lindley's ignorance of Marley Management's role will not toll the limitations period.

Furthermore, Lindley's complaint belies her assertions. "The true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained [his or] her action to a successful result." *Colormatch Exteriors, Inc. v. Hickey*, 275 Ga. 249, 251 (2002) (citation and quotation omitted). The complaint states that Lindley relied on Marley Management's representations in July 2005 that infrastructure for the Drayton Tower project would be complete by March 1, 2006. *See* Docs. 1-13 at 26; 15-1 at 2. Lindley's complaint also indicates that, due in part to Marley's mismanagement, the infrastructure was not completed on time. *See* Doc. 15-1 at 2. Accordingly, Lindley's complaint establishes that, by exercising reasonable diligence, Lindley would have discovered facts sufficient to maintain a cause of action against Marley Management.

Lindley's claims against Marley Management are barred by the statute of limitations and are accordingly ***DISMISSED***.

### IV. CONCLUSION

The FDIC-R's "Renewed Motion for Summary Judgment," *see* Doc. 16, is ***GRANTED***. Lindley's claims against the FDIC-R are ***DISMISSED***.

Marley Management's "Motion to Dismiss," *see* Doc. 15, is ***GRANTED***. Lindley's claims against Marley Management are ***DISMISSED***.

Lindley's claims against Drayprop, LLC, Draypark LLC, Michael Brown, and Reuben Croll remain pending.

This 4th day of January 2012.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA